IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE EKALLIIPSE MOULOKI, ) | |
| ) | |
| Plaintiff, ) | Case No. 14 C 5532 |
| ) | |
| v. ) | District Judge Sharon Johnson Coleman |
| ) | |
| MARIE PAULE EPEE, et al., ) | Magistrate Judge Sidney I. Schenkier |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Christine Ekalliipse Mouloki filed a nine-count complaint alleging that defendants Marie Paulee Epee and Eric Ngado Epee brought her to the United States for employment, and then forced her to work under inhumane conditions for little or no compensation. Plaintiff alleges federal law claims under the Trafficking Victims Protection Reauthorization Act of 2003 ("TVPRA") (Counts I-III) and the Fair Labor Standards Act ("FLSA") (Count IV), as well as state law claims for violation of the Illinois Minimum Wage Law ("IMWL") and the Illinois Labor Law (Counts V-VI), conversion (Count VII), fraudulent misrepresentation (Count VIII) and unjust enrichment (Count IX).

During the course of discovery, plaintiff filed a motion to compel, based on the claim that defendants wrongfully failed to preserve and produce certain relevant emails (doc. # 103). As relief for this conduct, plaintiff sought a forensic examination of defendants' computers and email servers, at defendants' expense, to attempt to retrieve the relevant emails; leave to re-depose a particular witness (and perhaps others based on the outcome of the forensic search); and attorneys' fees and costs incurred in connection with the motion. The motion was fully briefed

(doc. ## 119, 122); thereafter, at the request of the district judge, the parties filed status reports on the question of the cost of performing a forensic search (doc. ## 134, 136).

On February 14, 2017, after the referral of the motion to this Court (doc. # 140), we held oral argument on the motion and granted it in part (doc. # 148). We found that defendants had failed to preserve and produce certain relevant emails, and granted the request for a forensic examination. Based on our finding that the failure to preserve and produce the emails was purposeful, we required defendants to pay plaintiff her attorneys' fees and costs for the motion to compel, the supporting and reply memoranda, and the status report required by the district judge. However, we denied plaintiff's request that defendants pay the cost of the forensic search in the first instance, and instead ruled that plaintiff would have to pay that cost without prejudice to seeking to shift that cost to defendants depending on what information was retrieved from the search. We also denied the request for further depositions.

The plaintiff decided not to proceed with a forensic examination (doc. # 159). The parties could not reach agreement on the reasonable amount of attorneys' fees and costs that defendants would pay to plaintiff, which has resulted in plaintiff filing the motion for attorney fees (doc. # 163) that is now before the Court. The motion seeks $59,930.52 in attorneys' fees and costs. Defendants raise a variety of objections to the amount of fees and costs sought (doc. # 171), to which plaintiff has replied (doc. # 173). For the reasons that follow, we award plaintiff $19,290.20 in attorneys' fees, and deny the request for a reimbursement of costs.

I.

Plaintiff's request includes $55,411.59 in fees, based on a total of 102.70 hours devoted to the motion by five attorneys (Steven J. Fink, Trish Higgins, Johanna Jacob, Alex Fields and Cutis Heckman), one paralegal (Noah W. Cort) and one e-discovery specialist (William Moore),

all of whom were employed by plaintiff's lead law firm located in San Francisco, California (Pl.'s Mot., Ex. E).[1] In determining whether the amount sought is reasonable, our starting point is the "lodestar" amount: that is, the number of hours reasonably devoted to a matter multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). As we explain below, we find that both the hourly rates sought by plaintiff's legal team and the number of hours claimed should be reduced.

## A.

We begin with a consideration of the hourly rates sought by the various members of plaintiff's legal team. The best evidence of the reasonable hourly rate for an attorney is the rate he or she commands in the market from paying clients for similar work. *Pickett v. Sheridan Health Care Ctr.*, 813 F.3d 640, 647 (7th Cir. 2016); *see also Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012). Here, while the evidence plaintiff submitted on this point could have been more robust, we accept that the rates they seek here are the rates that they charge to their paying clients – and that their clients pay those rates.[2]

However, while an attorney's actual billing rate is the best evidence of a reasonable rate, it is not conclusive evidence. Rather, it is "presumptively appropriate" to use that rate as prima facie evidence of a reasonable rate. *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No.*

---

[1] The 102.70 hours that plaintiff claims constitute a reduction from the 134.47 hours that plaintiff's legal team devoted to the case during the pendency of the motion, in order to account for the use by plaintiff's attorneys of "block billing." Block billing aggregates multiple tasks performed by a lawyer in a day into one time entry, without breaking out who much time was devoted to each task. While far from ideal when attempting to determine an award to be made in a fee shifting case, the use of block billing is not forbidden. *Farafas v. Citizen's Bank & Trust of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006); *Chao v. Current Development Corp.*, No. 03 C 1792, 2007 WL 2484338, * 3 (N.D. Ill. Aug. 27, 2007). In this case, defendants suggest in the heading of one argument that plaintiff did not sufficiently reduce the hours claimed to account for the use of block billing (Defs.' Resp. at 7), but offer no reason to believe that plaintiff's lawyers failed in good faith to reduce the number of hours claimed to include only those they actually spent on the motion.

[2] We have given plaintiff leave to file under seal the exhibits that disclose the hourly rates for the members of their legal team (doc. # 169), respecting plaintiff's assertion that the rates constitute "confidential and commercially sensitive information . . . not generally known to the public" (doc. # 164: Mot. for Leave to File Under Seal at 2). Therefore, we do not discuss that information in the body of the opinion.

3

*205*, 90 F.3d 1307, 1310 (7th Cir. 1996). We have discretion to consider other factors and make adjustments to that hourly rate. *Blum v. Stenson*, 465 U.S. 886, 888 (1984). Here, three considerations lead us to reduce the hourly rates sought.

***First,*** Ms. Jacob and Mr. Fields, who performed most of the work, specialize in intellectual property matters, a point demonstrated by the website of plaintiff's lead law firm (cited in defendants' response). This is significant because, as the Seventh Circuit has observed, the hourly rate used in a fee shifting case should reflect rates that "similar experienced attorneys in the community charge paying clients for ***similar*** work." *Mathur v. Bd. of Trustees of S. Illinois Univ.*, 317 F.3d 738, 743 (7th Cir. 2003) (quotation omitted) (emphasis added). This observation reflects the reality that in an age of increasing specialization, especially among lawyers at larger firms, an attorney's billing rate is a function of – among other things -- his or her expertise in a particular area of practice. Thus, the inexperience of an attorney in a particular area is a permissible reason to depart from an attorney's established hourly rate for the lodestar calculation in a fee shifting case. *See People Who Care*, 90 F.3d at 1314-15 (the district court did not abuse its discretion in adjusting downward the requested fees on the ground that while the petitioning attorney previously had worked on civil rights cases, he never had worked on a desegregation case).

In this case, plaintiff has offered no evidence that either Ms. Jacob or Mr. Fields has any experience in civil rights, employment, or wage and hour cases (the type of federal claims brought here). The rates they charge clients for intellectual property matters do not speak to the reasonable rates for them to charge in areas of the law where they lack the experience and expertise that they have in intellectual property matters.[3]

---

[3] This consideration does not apply to the rate charged by Ms. Higgins, as the Orrick website describes her as specializing in employment and wage and hour law. It does apply to Mr. Fink, who is no longer affiliated with

4

**Second**, and in a related vein, the type of case being litigated is a relevant factor in determining what constitutes a reasonable hourly rate for a lawyer's services. An attorney's reasonable hourly rate should be no higher than "the prevailing market rate *for lawyers engaged in the type of litigation in which the fee is being sought.*" *Cooper v. Casey*, 97 F.3d 914, 920 (7th Cir. 1996) (emphasis in original) (citing *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 519 (7th Cir.1993)). In considering the reasonable hourly rate for an attorney in an FLSA case (which is one of the plaintiff's claims here), the Seventh Circuit stated that "hourly rates awarded in non-FLSA overtime cases are not particularly relevant as evidence of [the] market rate . . . because the reasonable hourly rate is capped at the prevailing market rate for attorneys engaged in FLSA work." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 n.6. Plaintiff has not offered any evidence that her lawyers' hourly rates for intellectual property work is relevant to establishing a reasonable hourly rate for civil rights, employment or wage cases.

**Third,** we consider the rates in both the geographic market in which plaintiff's legal team is located and those in the locale in which the case is pending. Even if the hourly rates for the members of plaintiff's legal team were reasonable for civil rights, employment, or wage and hour cases in San Francisco, that would not automatically show that plaintiff's legal team is entitled to apply those rates to a case in Chicago. We recognize that the hourly rate of an out-of-town attorney should not be reduced simply because it is higher than the rate of a local attorney. *Mathur*. 317 F33d at 743-44; *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1151 (7th Cir. 1993). That said, the case law recognizes – and plaintiff concedes (Pl. Reply at 2-3) -- the discretion of a trial court judge to reduce the hourly rate of an out-of-town attorney if there is a good reason to

---

Orrick. Mr. Fink is currently a solo practitioner in New York, and his website describes him as a litigator specializing in "resolving business disputes." http://www.sjfinkpllc.com/ (visited on June 23, 2017). There is no indication that Mr. Fink has special expertise in civil rights, employment or wage and hour cases.

do so. One such reason is the availability of local attorneys to perform the work at a lower billing rate. If "local attorneys could do as well, and there is no other reason to have [work] performed by [out-of-town attorneys], then the judge, in his discretion, might allow only an hourly rate which local attorneys would have charged for the same service." *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 (7th Cir. 1982). *See also Mathur*, 317 F.3d at 744 (where "there is reason to believe that services of equal quality were readily available at a lower charge or rate in the area where the services were rendered," then the judge may modify the out-of-town attorney's rate).

Here, plaintiff has made no showing that attorneys in Chicago – with or without civil rights, employment, or wage and hour law experience -- were unavailable to handle her case. Nor has she attempted to show that the rates sought by her attorneys are in line with the rates charged by attorneys in Chicago who handle those types of cases. To the contrary, we are aware of fee awards to highly respected and experienced lawyers in civil rights and wage and hour cases calculated at far lower hourly rate than the rates sought by plaintiff's counsel.[4]

Based on these considerations, we agree with defendants that the hourly rates sought by almost all of plaintiff's legal team members are too high. Defendants do not propose what the hourly rates for each member of the legal team should be, but generally suggest that the Court should "consider" the Laffey Matrix in determining the rates (Defs.' Resp. at 3). "The Laffey

---

[4] One example we cite is the lawyers from the Chicago law firm of Werman Salas PC, which specializes in wage and hour law. Mr. Werman, a 1990 law school graduate, recently has been awarded an hourly rate of $650.00 and Ms. Salas, a 2006 law school graduate, has been awarded an hourly rate of $525.00. *Sanchez v. Roka Akor Chicago LLC*, No. 14 C 4645, 2017 WL 1425837, * 5 (N.D. Ill. Apr. 20, 2017). One of the younger lawyers in their office – Sarah Arendt, a 2012 law school graduate (as is Ms. Jacob) has been awarded an hourly rate of $400.00. *Id.* Chicago lawyers who have litigated major civil rights cases also command rates far lower than sought by plaintiff's counsel here: two examples are Jon Loevy, a 1993 law school graduate, who has been awarded an hourly rate of $495.00, *Montanez v. Chicago Police Officers Fico (Star No. 6284) et. al.*, 931 F. Supp. 2d 869, 875 (N.D. Ill. 2013) and Torreya Hamilton, a 1995 law school graduate, who has recently been awarded an hourly rate of $450.00, *Baker v. Ghidotti*, 11 C 4197, 2015 WL 1888004 at *4 (N.D. Ill. April 24, 2015), *affirmed in part, vacated and remanded in part on other grounds, Baker v. Lindgren*, 856 F.3d 498 (7th Cir. 2017).

Matrix is a chart of hourly rates for attorneys and paralegals in the Washington, D.C. area that was prepared by the United States' Attorney's Office for the District of Columbia to be used in fee-shifting cases." *Pickett v. Sheridan Health Care Ctr.,* 664 F.3d 6632, 649 (7th Cir. 2011). That Matrix suggests the reasonable hourly rates for 12-month periods, with the most recent one being June 2016 through May 2017, which covers the time period during which plaintiff's legal team performed the work here at issue. The Matrix suggests hourly rates for attorneys based on their years of experience: $343.00 for an attorney with 1 to 3 years of experience (which would cover Mr. Fields), $421.00 4 to 7 years of experience (which would cover Ms. Jacob), $685.00 for an attorney with 11 to 19 years of experience (which would cover Mr. Fink), and $826.00 for an attorney with 20 years or more of experience (which would cover Ms. Higgins). The Matrix also suggests an hourly paralegal rate of $187.00; it offers no suggested rate for ESI specialists.

While trial courts within this Circuit "have occasionally considered the Laffey Matrix when considering the reasonableness of hourly rates for fee awards," they have "viewed it with differing levels of praise and skepticism." *Pickett,* 664 F.3d at 650.. Even the D.C. Circuit, where the Laffey Matrix originated, "has referred to the Matrix as 'crude' and has recommended that plaintiffs provide affidavits, surveys, and past fee awards to enable the district court to refine the Matrix for the particular attorney." *Id.* [5]

As we have previously commented, *Ragland v. Ortiz,* 08 C 6157, Report and Recommendation at 7-8 (N.D. Ill. Feb. 17, 2012) adopted 2012 WL 4060310 (N.D. Ill. Sept. 14, 2012):

---

[5] We note that Mr. Heckman is described on the billings as a career associate, a designation for which the Laffey Matrix does not suggest any hourly rate. Mr. Heckman has been out of law school for nine years, which using the Laffey Matrix would equate to an hourly rate of $608.00 – more than the hourly rate that the Matrix would suggest for Ms. Jacob, has been out of law school for five years but whom Orrick designates as a managing associate. This underscores the crude nature of the rates determined under the Laffey Matrix. In any event, we go no further in attempting to determine a reasonable rate for Mr. Heckman because, as we explain below, we decline to award fees for the time he spent on the motion.

The reason that the Laffey Matrix is correctly labeled as "crude" is because it uses the number of years of practice as a proxy for an attorney's level of experience, skill and accomplishment. We expect that the number of years a person is out of law school may, for some period of time, be a reasonable proxy for experience and skill. One might reasonably expect an attorney with five years of practice generally would have greater skill and experience than would an attorney with two years of practice.

However, certainly by the time a lawyer is in practice for eight years (the minimum threshold under the Laffey Matrix to qualify as an "experienced federal court litigator"), a client seeking an attorney has very little interest in whether the lawyer has practiced for 8, 18 or 28 years. The client is far more interested in the experiences the lawyer has had; the skills he or she possesses; and the record of achievement of the attorney in other cases. In our judgment, the Laffey Matrix's use of years of practice as a proxy for experience and skill (and thus the market rate that is commanded by an attorney) becomes increasingly crude – and decreasingly helpful – in the 8 to 10 year, 11 to 19 year, and 20-plus year brackets.

Employing this analysis, we find the Laffey Matrix --- albeit crude – to be helpful in connection with assessing the reasonable hourly rates for Ms. Jacob and Mr. Fields, but less helpful in assessing the hourly rates for the more senior attorneys. That said, we consider the Laffey Matrix as "one factor in a rate inquiry," but one that in no way trumps other evidence that bears on the reasonableness of the rates for members of plaintiff's legal team. In light of the body of case law in this district concerning reasonable paralegal rates to award in fee shifting cases, we will look to that case law and not the Matrix in determining the paralegal rate.

Using these considerations, we will award the following hourly rates for each lawyer on the plaintiff's legal team: (1) $465.00 for Mr. Fink, utilizing both the Laffey Matrix and considering his lack of experience in civil rights, employment or wage and hour cases; (2) $650.00 for Mr. Higgins, in light of the Laffey Matrix and her experience in employment and wage and hour law, but taking into consideration the hourly rates awarded to experienced attorneys in Chicago with those specialties; (3) $400.00 for Ms. Jacob and $300.00 for Mr. Fields, in light of the Laffey Matrix, their lack of experience in the areas of law involved in this

case, and the hourly rates awarded to attorneys in Chicago who do specialize in civil rights, employment and wage and hour law.

In addition, we determine the reasonable hourly for Mr. Cort's paralegal services is $125.00, which also takes into account paralegal fee awards in this district.[6] We will not make a determination of the reasonable rates for Messrs. Heckman and Moore because, as we explain below, we decline to award fees for any of the time they devoted to the matter.

**B.**

We now turn to the number of hours devoted to the motion. In a fee shifting scenario, the party seeking fees only may recover for the hours that were reasonably expended. *Johnson v. GDF, Inc.,* 668 F.3d 927, 931 (7th Cir. 2012). Defendants argue that the amount of time claimed by the plaintiff's legal team for certain tasks is excessive and should be reduced. We address each of the challenges below.

***First,*** defendants argue that the time devoted by Mr. Fields to the opening memorandum and reply is excessive, in light of the amount of time devoted by Ms. Jacob to those tasks. We agree that, in the aggregate, it would not be reasonable to shift to defendants the full amount of time these two attorneys devoted to briefing the motion. Based on our review of plaintiff's submission of time records (Pl.'s Mem., Ex. A), Ms. Jacob and Mr. Fields collectively devoted 28.40 hours to preparing the opening motion, which contained 10 pages of argument and authority and more than 70 additional pages of exhibits. Mindful that no attorneys are the same in the time it may take them to perform certain tasks, *Gusman v. Unisys Corp.,* 986 F.2d 1146, 1150 (7th Cir. 1993) ("[L]awyers do not from cookie cutters. Some are fast studies and some require extra preparation"), we do not consider that expenditure to be unreasonable. However,

---

[6] *See, e.g., Nelson v. Lis,* No. 09 C 883, 2017 WL 1151055, * 5 (N.D. Ill. Mar. 28, 2017) (collecting cases and awarding an hourly rate for paralegal services of $125.00).

these two attorneys then devoted even more time – 29.665 hours – to preparing a seven page reply. We find that it would not be reasonable to require defendants to pay that amount. We will reduce the amount time devoted to the reply memorandum for which we will shift fees to 14.20 hours, or one half of the amount of time they spent on the opening motion. We will thus reduce the amount of time claimed by Ms. Jacob and Mr. Fields for preparing the reply by 7.10 hours.

**Second,** defendants challenge the 0.8 hours claimed by plaintiff for Mr. Fields' time spent in preparing a notebook for Ms. Jacob to use during the hearing on the motion. We have considered plaintiff's argument that this work could not have been performed by a secretary. However, we have no reason to believe the assembly of those materials could not have been done by a paralegal, and we will therefore reimburse this small amount of time at Mr. Cort's paralegal rate rather than at Mr. Fields' attorney rate.

**Third,** defendants challenge time claimed by Ms. Jacob for travel, preparation for and attendance at hearings before the district judge on January 11 and January 30, 2017. Defendants argue that those hearings were not held in connection with the motion, but rather with a separate motion by defendants to file an amended answer (Defs.' Resp. at 10-11). Plaintiff argues that the hearings were in fact set to hear the motion to compel (Pl.'s Reply at 8-9). We will not eliminate the preparation time for the hearings, but we will eliminate 19.99 hours of travel time for those motions. Plaintiff argues that the importance of being physically present in court to argue the motion made it reasonable for Ms. Jacob to travel to Chicago to appear before the district judge on dates when the motion might be heard (Pl.'s Reply at 10-11). However, plaintiff has not shown that paying clients routinely pay for travel time when the attorney is not working on the matter while en route. Moreover, Ms. Jacob participated by telephone during the February 14, 2017 hearing before the Court on the motion, and in our judgment did not achieve a less

desirable result than she would have obtained had she traveled to Chicago to be physically in the courtroom for the argument. Ms. Jacob's ability to effectively argue the motion by telephone shows that her earlier trips to Chicago in anticipation of arguing the motion were by no means necessary. For these reasons, we find it unreasonable to require defendants to pay for the time spent for that travel.[7]

**Fourth,** defendants argue that the nine hours claimed by Mr. Moore for investigating the feasibility and cost of imaging defendants' hard drives is excessive. We do not address that point, because we decline to shift the cost of Mr. Moore's work to the defense for a separate reason: plaintiff never conducted the imaging and forensic search. The cost of the imaging was not relevant to whether the defendants committed a discovery violation, but only to the remedy that would be appropriate if a violation occurred. While plaintiff succeeded in establishing a discovery violation, she did not establish that forensic imaging at the defense expense was an appropriate remedy; and, we note that plaintiff did not undertake the search at its own expense that the Court authorized. We will not shift the cost of Mr. Moore's work in aid of a request for a remedy that plaintiff neither achieved (imposing the cost for it on defendants) nor pursued (when given the chance to perform the imaging at her own expense).

We adopt this same reasoning in declining to award fees for 1.4 hours Ms. Jacob spent obtaining quotes for the contemplated forensic work, and for the 2.3 hours that Mr. Heckman devoted to legal research into issues concerning data collection in Cameroon, where the defendants' computers were located. That work was unnecessary to establish whether defendants failed to preserve information, but pertained only to the remedy of obtaining their hard drives.

---

[7] We have considered defendants' argument that an additional entry of time by Ms. Jacob should be reduced (Defs.' Resp. at 10), but find that defendants have failed to offer sufficient support for that contention. For the same reason, we reject defendants' request to reduce the time of Mr. Fink (Defs.' Resp. at 10).

*Fifth,* defendants argue that plaintiff should not be allowed to recover the two hours spent by Mr. Cort, a paralegal, in reviewing and analyzing documents associated with the motion and preparing courtesy copies for the Court. We agree that the preparation of courtesy copies is a clerical task that does not require the skill of a paralegal. Preparing and transmitting courtesy copies that meet the requirements of any judge is not rocket science. It is hard to envision two hours of time devoted to that task without the vast majority of the time being clerical in nature (generating copies of what was filed, placing them in notebooks, inserting tabs, etc.). That kind of activity does not warrant shifting fees at a paralegal rate. We therefore exclude that time.

*Seventh*, defendants argue that the time spent by more senior attorneys (Ms. Higgins and Mr. Fink) was duplicative of the time spent by Ms. Jacob and Mr. Fields. This argument ignores that the guiding hand of a more experienced, senior attorney may promote efficiency. In this case, the amount of time Mr. Fink spent on the matter was modest, and we decline to reduce that time.

### C.

Based on the forgoing, our determination of the lodestar calculation for each member of plaintiff's legal team is as follows:

| LEGAL TEAM MEMBER | HOURS SOUGHT | ADJUSTED HOURS | ADJUSTED HOURLY RATE | LODESTAR AMOUNT |
|---|---|---|---|---|
| Steven J. Fink | 5.68 | 5.68 | 465.00 | $2,641.20 |
| Trish Higgins | 0.78 | 0.78 | $650.00 | $507.00 |
| Johanna Jacob | 49.47 | 20.98 | $400.00 | $8,392.00 |
| Alex Fields | 33.40 | 26.3[8] | $300.00 | $7,750.00 |
| Curtis D. Heckman | 2.3 | 0.0 | ---------- | $0.00 |
| William Moore | 9.0 | 0.0 | ---------- | $0.00 |
| Noah W. Cort | 2.0 | 0.0 | $125.00 | $0.00 |
| TOTAL | 102.63 | 53.74 | | $19,290.20 |

C.

We now turn to a consideration of whether the lodestar calculation we have reached should be adjusted in either direction – upward or downward – based on other considerations. The parties focus on two in particular, which we address in turn.

*First*, defendants say the "minimal" degree of success the plaintiff achieved in the motion warrants a downward reduction (Defs.' Resp. at 5). For her part, plaintiff says she was "highly successful" on the motion (Pl.'s Mot. at 4). As is often the case, we find the truth to be somewhere in the middle of these assertions.

Plaintiff surely was successful on the motion. She established that the defendants committed an intentional act of spoliation, and obtained the right to forensically image their computers. On the other hand, the plaintiff did not persuade the Court that the defendants should

---

[8] A small portion of Mr. Fields' time (0.8 hours) is calculated at the paralegal rate, based on our discussion at page 10 above.

13

bear the cost of that imaging, at least until the plaintiff paid for the search and showed that indeed defendants deleted material documents that plaintiff had not obtained through other mean. Plaintiff's decision not to take the steps to prove there was such a loss diminished the level of success she achieved – but not to the degree that it warrants a reduction in the lodestar calculation of attorneys' fees.

*Second*, defendant suggests that plaintiff's attorneys spent an excessive amount of time on the matter because it was a *pro bono* matter and thus there was not the pressure to be efficient that exists when working for a paying client (Des.' Resp. at 7). We reject the categorical assertion that attorneys who serve public interest by performing *pro bono* work are inherently inefficient. To the extent that we have found that plaintiff's attorneys here spent too much time on the matter, we have taken that into account in the reduction we already have made to the lodestar amount plaintiff has sought.

## II.

Finally, we address the costs that plaintiff seeks: $1,930.62 in travel costs for the trips Ms. Jacob took to Chicago on the motion. As we have explained above, we conclude that the motions did not require Ms. Jacob's presence in Chicago. We therefore will not include the travel costs in our award.

14

## CONCLUSION

For the reasons set forth above, we grant plaintiff's motion for attorney fees (doc. # 163), but in the reduced amount of $19,290.20.

**ENTER:**

SIDNEY I. SCHENKIER
United States Magistrate Judge

**DATE: June 27, 2017**

15