IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHRISTINE EKALLIIPSE MOULOKI, )
)
    Plaintiff, )
)     Case No. 14 C 5532
    v. )
)     District Judge Virginia M. Kendall
MARIE PAULE EPEE, et al., )
)     Magistrate Judge Sidney I. Schenkier
    Defendants. )

## REPORT AND RECOMMENDATION

Plaintiff Christine Ekalliipse Mouloki filed a nine-count complaint alleging that defendants Marie Paule Epee and Eric Ngado Epee brought her to the United States for employment, and then forced her to work under inhumane conditions for little or no compensation. At the end of a four-day trial, on July 18, 2017 a jury returned a verdict finding for the defendants on plaintiff's federal law claims under the Trafficking Victims Protection Reauthorization Act of 2003 ("TVPRA") and her state law claim for fraudulent misrepresentation. However, the jury found for plaintiff and against each defendant on the federal claims under the Fair Labor Standards Act ("FLSA"), and the state law claims for conversion, unjust enrichment, and violation of the Illinois Wage Payment and Collection Act (the "Wage Act").

The district judge entered judgment on the verdict on July 18, 2017, but left blank the judgment amount (doc. # 230). In a separate report and recommendation, we have recommended that the district judge amend the judgment to reflect the jury verdict awarding a total of $156,688.00, and that the district judge deny plaintiff's request to increase that amount to include statutory damages under the Wage Act or prejudgment interest (doc. # 282: 01/08/18 Report and

Recommendation). We now address two other post-trial matters referred by the district judge: plaintiff's motion to award attorneys' fees and costs (doc. # 261), and plaintiff's bill of costs (doc. # 245). Plaintiff seeks an award of $961,323.80 in fees and $11,345.90 in costs.[1] Both the motion and bill of costs have been fully briefed. For the reasons set forth below, we respectfully recommend that plaintiff be awarded $460,829.28 in attorneys' fees and $11,345.90 in costs.

## I.

We begin with plaintiff's request for an award of attorneys' fees. Plaintiff obtained jury verdicts and damages awards on her claims under the FLSA, which provides that a prevailing plaintiff may recover her reasonable attorneys' fees. 29 U.S.C. § 216. Although plaintiff did not prevail on her trafficking and fraudulent misrepresentation claims, she won verdicts on her federal and state law wage claims and her state law claims for conversion and unjust enrichment, and received a substantial ($156,688.00) damages award. Defendants do not (and cannot) claim that this award was so minimal as to constitute no victory at all. *See, e.g., Moriarty v. Svec,* 233 F.3d 955, 966 (7th Cir. 2000) (a party who obtained a $2,400.00 judgment was entitled to recover fees as a prevailing party); *Cole v. Wodziak,* 169 F.3d 486, 488 (7th Cir. 1999) (plaintiffs' recoveries of $3,500.00 and $1,000.00, respectively, along with punitive damages was "more than a pittance" and thus qualified plaintiffs as prevailing parties entitled to recover attorneys' fees). Plaintiff's victory in this case, while not complete, was more than sufficient to qualify her as a prevailing party entitled to recover attorneys' fees.[2]

---

[1] Plaintiff originally sought $970,725.50 (doc. # 261: Pl.'s Mot. at 7), but reduced that figure to $961,323.80 to correct an error in the hourly rate used for one of plaintiff's attorneys (doc. # 279: Pl.'s Reply at 2 n.1 and 9).

[2] In their response to the motion for attorneys' fees, defendants do not challenge plaintiff's status as the prevailing party. However, in their response to the bill of costs, defendants argue that the mixed jury verdict and plaintiff's recovery of only a small percentage of the damages she sought should deprive her of prevailing party status for the purposes of determining whether costs should be awarded (doc. # 254: Defs.' Obj. at 2-3). For the reasons set forth below (page 24, *infra*), we disagree. Moreover, while the fact that plaintiff did not prevail on all claims or recover all the damages sought does not deprive her of prevailing party status on her fee petition, as we will see below, it

Plaintiff requests $961,323.80 based on a total of 2,239.21 hours of time devoted to the case by four attorneys (Steven J. Fink, Trish Higgins, Johanna Jacob and Alex Fields) and 378.40 hours devoted to the case by one paralegal (Noah W. Cort) (Pl.'s Mot., Fields Dec., Ex. C). In determining whether the amount sought is reasonable, our starting point is the "lodestar" calculation: that is, the number of hours reasonably devoted to a matter multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). However, while the lodestar calculation constitutes a "centerpiece of attorneys' fees determinations," *Pickett v. Sheridan Health Care Ctr.,* 664 F.3d 632, 639 (7th Cir. 2011) (internal quotations omitted), the analysis of what constitutes a reasonable fee award does not begin and end there. Once it has been calculated, the lodestar figure may be adjusted based on a variety of factors, including the degree of success obtained. *See, e.g., Estate of Enoch ex. rel. Enoch v. Tienor,* 570 F.3d 821, 823 (7th Cir. 2009); *Moriarty,* 233 F.3d 967-68 (while there is no rule "requiring that a reasonable attorney's fee be no greater than some multiple of the damages claimed or recovered[,] . . . proportionality concerns are a factor in determining what a reasonable attorney's fee is").

In Part I.A, we address the reasonable hourly rates for the services of plaintiff's attorneys and paralegal. In Part I.B., we consider defendants' challenges to the number of hours of work for which plaintiff seeks compensation. In Part I.C., we address whether the lodestar number should be reduced.

---

does have consequences with respect to the amount of fees that should be shifted. *See, e.g., Harper v. City of Chicago Heights,* 223 F.3d 593, 603 (7th Cir. 2000), quoting *Texas Teachers Ass'n v. Garland Independent Sch. Dist.,* 489 U.S. 782, 791-93 (1989) (once a plaintiff has established prevailing party status by showing she "has succeeded on any significant issue in the litigation which achieved some of the benefit the parties sought in bringing suit . . . ., the degree of the plaintiff's overall success goes to the reasonableness of the award . . . , not to the availability of a fee award *vel non*").

### A.

We begin with the hourly rates claimed for plaintiff's attorneys and paralegal. On that question, we do not write on a clean slate. Earlier in this litigation, we awarded plaintiff attorneys' fees in connection with a discovery motion (doc. # 148), and in determining the amount of fees to be awarded (a matter on which the parties could not agree), we had occasion to determine the hourly rates for the four attorneys and paralegal for whom plaintiff now seeks an award of attorneys' fees. In a Memorandum Opinion and Order dated June 27, 2017, we determined the following hourly rates: (1) Steven J. Fink -- $465.00; (2) Trish Higgins -- $650.00; (3) Johanna Jacob -- $400.00; (4) Alex Fields -- $300.00; and (5) Noah W. Cort -- $125.00 (doc. # 187: 06/27/17 Mem. Op. and Order at 13).[3]

In her current fee petition, plaintiff seeks an award based on those same hourly rates. Nonetheless, defendants object to those rates (doc. # 277: Defs.' Resp. at 1-5). Defendants assert that the hourly rates we previously awarded are too high for wage and hour cases because we took into account the rates for attorneys who handle civil rights cases, which should not be considered now that plaintiff prevailed only on the wage and hour claims and not on her civil rights (human trafficking) claims. We reject this argument for two reasons.

*First,* the hourly rates we awarded squarely took into account wage and hour cases, as well as the Laffey Matrix – which defendants urged us to consider. The rates we awarded to Ms. Jacob and Mr. Fields, who were responsible for 84 percent of the attorney time for which compensation is now sought,[4] are commensurate with the hourly rates for attorneys of

---

[3] In that opinion we also determined the hourly rates for two other members of plaintiff's legal team, but since plaintiff's fee petition does not seek compensation for their services, we do not discuss the rates for those individuals.

[4] Ms. Jacob and Mr. Fields spent 1,888.72 hours on the case, out of a total amount of attorney time of 2,239.21 for which compensation is sought.

comparable experience in wage and hour cases and consistent with the Laffey Matrix (06/27/17 Mem. Op. and Order at 6-8 and n.4). The rate we awarded Ms. Higgins, the attorney who spent the bulk of the remaining time for which compensation is sought, is in line with the hourly rates charged by attorneys with comparable experience in wage and hour matters, which is one of Ms. Higgins' areas of practice (*Id.* at 4-6 and nn. 3-4). We conclude that the hourly rates we awarded in June 2017 would be fully appropriate even if the case had never presented any civil rights claims.

*Second*, we disagree with defendants' unspoken premise that the reasonable hourly rate should be determined by a *post hoc* analysis. With the benefit of hindsight, defendants argue that the reasonable rate should not take into account civil rights claims on which the plaintiff did not prevail. However, the reasonable hourly rate is determined by consideration of the market rate for similar work. *Pickett*, 664 F.3d at 640. Here, the federal claims asserted by plaintiff combined allegations concerning both civil rights and wage and hour law. Our assessment is that these allegations involved overlapping evidence and theories, which cannot be neatly segregated and then used to finely calibrate an hourly rate that would apply to a "pristine" wage and hour or civil rates claim.

We therefore recommend that the district judge award attorneys' fees to plaintiff based on the hourly rates that plaintiff seeks in her motion, and that this Court awarded in its earlier decision.

### B.

We now turn to the number of hours devoted to the case. Under a fee shifting statute, a prevailing party may only recover for the hours that were "reasonably expended." *Johnson v. GDF, Inc.,* 668 F.3d 927, 931 (7th Cir. 2012). In determining what is reasonable, we are mindful

that no two attorneys are the same with respect to the amount of time it may take them to perform certain tasks. *See Gusman v. Unisys Corp.,* 986 F.2d 1146, 1150 (7ᵗʰ Cir. 1993) ("Lawyers do not come from cookie cutters. Some are fast studies and others require extra preparation").

Defendants argue that far too much time was devoted to the case. We are sympathetic to the proposition that 2,239.21 hours of attorney time (in additional to 378.40 hours of paralegal time) is unreasonable for a case that culminated in a four-day jury trial. We appreciate that the international aspects of this case presented complexities that would have been present even had the plaintiff not asserted the trafficking claims, and that warranted some increased level of attorney time. But, 2,200-plus hours was just too much attorney time to devote to the matter.[5]

The difficulty lies in determining which hours devoted to the matter should be eliminated or reduced. Defendants identify 481 (out of 971) time entries that they challenge. Before addressing those specific challenges, we consider several more overarching arguments defendants offer concerning the number of hours claimed by plaintiff.

### 1.

*First,* we do not find persuasive defendants' contention that plaintiff's attorneys' fees are excessive merely because defense counsel litigated the case for a total fee of $100,000.00 (Defs.' Resp. at 10-11). Local Rule 54.3 requires a party who opposes a fee petition to produce its own

---

[5] Plaintiff protests that she has already exercised "billing judgment" by not seeking compensation for attorneys or other personnel who billed less than $20,000.00 to the matter (Pl.'s Mot. at 4; doc. # 279: Pl.'s Reply at 6-7). But, we are reluctant to give plaintiff significant credit for that reduction, when the remaining number still is so high. Plaintiff's exhibits show that in addition to the five persons for whom she seeks compensation, 10 other lawyers and 26 other legal staff spent time on the case (Pl.'s Mot., Field Dec., Ex. F). We rejected before the suggestion that plaintiff's lawyers acted inefficiently *because* it was a pro bono matter (06/27/17 Mem. Op. and Order at 14), and we reject now any suggestion that plaintiff's attorneys loaded up on the number of lawyers and staff assigned to the case with any ulterior motive. They would have no economic incentive to do so, as plaintiff's lawyers had no assurance during the three years they worked on the matter that they would win the case and be able to recover fees. That said, we do view the extraordinary number of people assigned to perform tasks on the case as evidence of a failure to exercise the kind of restraint that a client likely would impose on a law firm in a paying matter.

6

attorneys' time and work records, in order to avoid "hypocritical objections." *Farfaras v. Citizen's Bank & Trust of Chicago,* 433 F.3d 558, 569 (7th Cir. 2006). A party opposing a fee petition who fails to provide that information can find itself on "weak footing" in challenging the amount of time spent by the opponent on the case. *Mostly Memories, Inc. v. For Your Ease Only, Inc.,* 594 F. Supp. 2d 931, 934 (N.D. Ill. 2009). Here, defendants do not support their assertion of the fees they billed in the case with any evidence of the amount of time they spent on the matter, or the nature of the billing arrangement between defendants and their counsel. We therefore do not consider defendants' statement as to their attorneys' fees to be a useful measuring stick by which to assess the reasonableness of the time plaintiff's attorneys spent on the case.

***Second***, defendants argue that the inclusion of the human trafficking claims unnecessarily increased the complexity of the case and the amount of time plaintiff's attorneys devoted to it (Defs.' Resp. at 6-7). However, plaintiff's lack of success on the trafficking claims does not automatically mean that the time devoted to those claims is not compensable. "Where the hours spent on successful claims can easily be distinguished from those spent on unsuccessful claims, the court can simply strike the latter entries when computing the lodestar." *Montanez v. Simon,* 755 F.3d 547, 553 (7th Cir. 2014). But, identifying the time spent on specific claims is often a challenging task. "[I]t is appropriate to consider the litigation as a whole, rather than viewing the specific claims atomistically," when the plaintiff's claims "involve a common core of facts," thereby making it "difficult to divide the hours expended on a claim-by-claim basis." *Catalan v. RBC Mortgage Co.,* 05 C 6920, 2009 WL 2986122, at *3 (N.D. Ill. Sept. 16, 2009), quoting *Ustrak v. Fairman,* 815 F.2d 983, 988 (7th Cir. 1988). As a result, "when the work on each set of claims is difficult to disentangle, the lodestar calculation will likely include some time spent on

unsuccessful claims," which is a consideration relevant to whether to reduce the lodestar figure once calculated – but not to reducing the number of hours that go into calculating the lodestar figure. *Montanez*, 755 F.3d at 553.

We view this as a case where factual assertions relevant to the human trafficking claims were intertwined with those relevant to the wage and hour claims. Plaintiff's status in defendants' household (such as, whether she was an employee or instead was a family friend), and her reasons for tolerating the conditions there for so long without complaining, involve evidence and allegations relevant to both the trafficking and wage claims. Defendants make no effort to identify the specific time entries they say involved work on the trafficking claims but had nothing to do with other claims in the case. Given defendants' failure to offer that kind of specificity, we see no reason to attempt to identify any such entries on our own.

***Third***, defendants suggest that rather than attempt a line-by-line reduction in the amount of time devoted to the human trafficking claims, we may simply make an across the board reduction in hours to reflect plaintiff's limited success (Defs.' Resp. at 7). That approach to reducing the number of lodestar hours would be available to us only if the fee petition were "vague or inadequately documented." *Harper*, 223 F.3d at 605. In this case, despite defendants' complaint about the format of plaintiff's time entries (Defs.' Resp. at 10), the entries were sufficient for defendants to identify 481 out of 971 that they challenge. As a result, we disagree that the Court may simply engage in a general reduction of the hours to be included in the lodestar calculation without regard to specific entries.

## 2.

We now turn to the specific time entries that defendants challenge. Consideration of those challenges has been unnecessarily complicated by defendants' failure to correlate the

entries that they challenge, which they identify by highlighting specific entries on the 19 pages of time records (Defs.' Resp. at 10; Pl.'s Mot., Ex. E), with the discussion of those challenges in their response. Defendants' response refers only to pages of time entries (most pages include more than 50 entries, not all of which are highlighted), and in some instances, makes no reference at all to the pages of the time records that contain entries they highlighted. Defendants also fail to perform any calculation of the reduction in the lodestar hours that would result if the challenged entries were eliminated.

In short, defendants' submission falls far short of what we would expect from a party challenging the opponent's fee petition under Local Rule 54.3. *See Valerio v. Total Taxi Repair & Body Shop,* 82 F. Supp. 3d 723, 743 (N.D. Ill. 2015) (rejecting challenges to time entries alleged to be excessive or redundant, when the defendant did not provide the basis for the allegation but said only the basis was "self-explanatory"). That said, we will consider each specific challenge defendants raise in their response to the extent we are able to readily correlate that challenge to highlighted entries.

**a.**

*First*, defendants say that plaintiff's attorneys spent too much time in preparing the complaint (Defs.' Resp. at 8). According to defendants, the time records show that six attorneys spent more than 70 hours during a five month period preparing the complaint, whereas preparing a straight-forward wage complaint should have required no more than six to ten hours (*Id.*). Plaintiff says that her attorneys did not spend 70 hours just preparing the complaint, and that much of the time defendants criticize was instead devoted to interviewing the plaintiff (a task complicated by language barriers), coordinating foreign service, and performing legal research (Pl.'s Reply at 7). However, plaintiff states that she does not oppose a reduction in the time

9

devoted to the drafting of the complaint to the extent the amount of time was "unreasonable" or any of the time entries were "vague" (*Id.*).

Defendants cite to two pages of the time records for this objection, without identifying which of the 95 highlighted entries they challenge pertain to preparing the complaint or how they came to the 70 hour calculation. Plaintiff's reply is equally unhelpful, as she does not state how many hours were devoted to preparing the complaint or what she suggests a reasonable reduction would be. In the period through April 2, 2014, which consists of entries that defendants did not highlight and thus do not specifically challenge, Ms. Jacob devoted approximately 25 hours to preparing the complaint, and it was reviewed by Mr. Fink (1.25 hours) and Ms. Higgins (1.00 hours). In the period from that point through July 21, 2014, the date the complaint was filed, the challenged entries concerning the drafting of or research for the complaint reflect approximately 22 hours by Ms. Jacob, 3.5 hours by Mr. Fink, and 1.43 hours by Ms. Higgins (there are several additional entries during this time period reflecting more than 14 additional hours of work devoted to drafting the complaint that defendants did not highlight). In making that calculation, we have not considered entries that reflect interviews of the plaintiff, that discuss service of process (unless they also reflect time drafting the complaint), or that reflect research into restraining orders or attachment of assets (which we discuss separately below).

Thus, far from being a "false" assertion, as plaintiff contends (Pl.'s Reply at 7), defendants are correct that plaintiff's attorneys spent some 70 hours preparing the complaint. For a wage case, that is excessive, even accounting for communication barriers; in that regard, we note that most of the challenged entries involved the drafting process and thus would not be implicated by difficulties of communicating with the client. The amount of time claimed also is excessive even for a complaint including trafficking claims. The complaint that plaintiff filed on

July 21, 2014 (doc. # 1) was 21 pages long, and contained only about 10 pages of factual allegations. Apart from the trafficking claims, the legal claims were standard ones asserted under long-standing federal and state law principles.

Defendants elected to challenge (by their highlighting) approximately 22 hours of Ms. Jacob's time, 1.43 hours of Ms. Higgins' time, and 3.5 hours of Mr. Fink's time. We sustain those challenges. Those challenges totals 26.93 hours, bringing the total amount of remaining time devoted to preparing the complaint to a little more than 40 hours. While that amount is still too much, we will not reach out to reduce lodestar hours that defendants did not specifically challenge. *Montanez*, 755 F.3d at 555 (objections must be "specific enough to allow a response"). Rather, we will take that factor into consideration in determining whether the lodestar calculation should be adjusted.

### b.

***Second***, defendants argue that plaintiff's attorneys conducted research that was unnecessary or that resulted in "dead ends" (Defs.' Resp. at 8-9). Plaintiff responds that the challenged research – which included looking into issues of foreign service, attachment of assets, and temporary restraining orders – was a "necessary and practical task" (Pl.' Reply at 7).

We agree with plaintiff that it was necessary for her attorneys to investigate the means to effect service on the defendants, who were located in a foreign country. However, we find the amount of time devoted to that question to be excessive. By our calculation, and looking solely at the highlighted entries, plaintiffs' attorneys spent approximately 34.00 hours on the issue of service (about 31.00 hours by Ms. Jacob, about 2.00 hours by Ms. Higgins, and 1.00 hour by Mr. Fink). That number does not include time that they devoted to preparing a motion to approve alternative means of service: 13.12 hours (12.92 hours by Ms. Jacob and .20 hours by Ms.

11

Higgins), of which defendants challenge 8.51 hours spent by Ms. Jacob and .20 by Ms. Higgins. It also does not include the time spent on a motion to extend time for service: 4.47 hours (3.77 hours by Ms. Jacob and .70 hours by Ms. Higgins), of which defendants challenge 1.35 hours by Ms. Jacob and .70 hours by Ms. Higgins. In sum, then, plaintiff's attorneys devoted at least close to 52 hours to the question of service, not including time devoted to that task that was not challenged. Plaintiff has not offered an explanation for why the task took so much time, either in the time entries (which often say nothing more than "coordinate service") or in her reply. We will reduce Ms. Jacob's compensable time from the nearly 50 hours she alone spent on the question of service to a total of 20 hours (a reduction in her lodestar hours by 27.69 hours), which we find reasonable in light of the complexities clearly faced by serving defendants who were located abroad. We will not reduce the time of Ms. Higgins, as defendants have not demonstrated that her small amount of time in a supervisory role was unreasonable; however, we will eliminate the 1.00 hour of time for Mr. Fink, which we consider duplicative of the supervisory role served by Ms. Higgins.

We disagree with plaintiff that it is reasonable to shift the cost to the defense of research prior to filing the complaint on legal avenues that did not pan out, such as prejudgment attachment of assets through a temporary restraining order or other means. We therefore will eliminate from the lodestar calculation 18.78 hours plaintiff's attorneys spent on that research (18.38 by Ms. Jacob and .40 by Ms. Higgins).

### c.

*Third,* defendants challenge a number of entries as either reflecting overstaffing, seeking compensation for lawyers performing clerical work, or as too vague to justify reimbursement (Defs.' Resp. at 8-9). Plaintiff appears to argue that any overstaffing issues have been addressed

by her decision to eliminate any request for compensation for the time spent by 10 lawyers and 26 other staff on the matter (Pl.'s Reply at 6-7). We largely agree with plaintiff's assessment. However, we have no explanation as to the unique oversight roles that Mr. Fink and Ms. Higgins performed. Ms. Higgins and Mr. Fink both were involved in the case from its inception, but as we previously noted, Ms. Higgins brought to the table experience in employment and wage and hour law that Mr. Fink lacked (06/27/17 Mem. Op. and Order at 4-5 n. 3). Plaintiff specifically challenges 25.85 out of the 50.82 hours that plaintiff claims for Mr. Fink. Based on the foregoing discussion, we already have eliminated 4.50 of Mr. Finks' challenged hours from the lodestar calculation. To further address the duplication of Mr. Finks' and Ms. Higgins' roles, we now eliminate the rest of Mr. Fink's challenged time (21.35 hours) from the calculation.

Plaintiff makes no response to defendants' criticism that plaintiff's lawyers seek compensation for work that was clerical in nature. As for the criticism that certain time entries are vague, plaintiff says only that she does not oppose a reduction in hours claimed for any entries that fall into that category (Pl.'s Reply at 7). As to these two categories, we have examined the highlighted entries on the pages of the time entries that defendants have identified. Certain of the entries are indeed vague, stating either no description of the work or simply stating that the time was for "emails." To account for this, we eliminate .70 hours of Ms. Higgins' time where she provided no description for her entries; there were challenged entries by Mr. Fink simply stating a description of the time as spent on emails, but those are included in the challenged entries which we already have eliminated from the lodestar calculation.

On the other hand, we do not consider it vague to state that time was spent to "finalize [a] complaint" or to communicate with opposing counsel "regarding document production." While defendants highlight such entries as vague, in our judgment defendants' true complaint about

13

them is about the amount of time devoted to certain tasks, such as finalizing the complaint, which we have already addressed. We do, however, note that plaintiff's counsel logged 6.88 hours (6.73 by Ms. Jacob and .15 by Ms. Higgins) in drafting an initial status report in the case. Defendants challenge 5.83 of the hours logged by Ms. Jacob. We have reviewed the status report (doc. # 18), and find the amount of time spent on its preparation to be far more than one would expect for a routine initial status report. As a result, we will reduce the amount of Ms. Jacobs's time to be included in the lodestar calculation for this task to a total of 3.00 hours, a reduction of 3.73 hours.

Finally, we do agree there were certain highlighted entries that reflect attorneys doing non-attorney work, such as Mr. Fields making his travel arrangements in June and July 2017 and Ms. Jacob spending time coordinating meetings in July 2015. Those are tasks that do not require an attorney, and so we eliminate from the time to be included in the lodestar calculation 1.35 hours for Mr. Fields and 1.22 hours for Ms. Jacob.

### d.

*Fourth,* defendants challenge time claimed by Ms. Jacob for travel, preparation for, and attendance at depositions and court hearings (Defs.' Resp. at 9). Plaintiff does not address this point. With respect to travel time for court appearances, we held in our earlier opinion that this time is not compensable because plaintiff had not shown that (1) paying clients routinely pay for travel time when the attorney is not working on the matter while en route, and (2) counsel's physical (as opposed to telephonic) presence was required for the hearings in question (06/27/17 Mem. Op. and Order at 10-11). While we have no doubt that it was necessary for plaintiff's counsel to be personally present at depositions, and to travel if reasonably necessary to do so,

14

plaintiff still has offered no evidence to show that her attorneys' paying clients routinely pay for travel time.

Accordingly, we will eliminate from the lodestar calculation travel time where work was not being performed. This covers 24.00 hours of travel time for Ms. Jacob between San Francisco and Chicago for court hearings prior to trial, as well as travel time for depositions and trial for Ms. Jacob (44.00 hours), Ms. Higgins (9.00 hours), Mr. Fields (15.00 hours) and Mr. Cort (4.00 hours).[6]

### e.

*Fifth,* defendants assert that plaintiff is improperly seeking fees for the time her attorneys spent on briefing the petition for fees from the earlier sanctions motion (Defs.' Resp. at 9-10). By our calculation, plaintiff seeks a total of 103.94 hours for work spent on the earlier fee petition (47.30 hours for Mr. Fields, 49.44 hours for Ms. Jacob, 2.2 for Ms. Higgins, and 5.00 for Mr. Cort). Plaintiff argues that it is appropriate to seek compensation for that time now, but also states that "the Court is free to eliminate those fees if it feels so inclined" (Pl.' Reply at 7). We will accept that invitation, particularly because plaintiff now seeks compensation for more time spent on the fee petition than they sought (102.70 hours) for the time her attorneys spent on the successful sanctions motion (06/27/17 Mem. Op. and Order at 2-3 and n.1).

### f.

*Sixth,* defendants argue generally that there should be a reduction in the lodestar hours because the defense tried the case with two attorneys but plaintiff used three attorneys and a paralegal at trial (Defs.' Resp. at 10 n.7). However, we have observed many one-week trials in

---

[6] Where the time record identifies a specific amount of travel time, we use that amount of time in making the reduction. Where the time record does not contain a specific number of hours for travel, we use 4.00 hours between San Francisco and Chicago, 5.00 hours between San Francisco and Washington, D.C., and 5.50 hours between San Francisco and New York.

which one or both sides used three attorneys (and support staff) at trial. Defendants' decision to use two attorneys at trial does not establish that it was unreasonable for the plaintiff to use three attorneys.

Moreover, while defendants have highlighted many of plaintiff's counsels' time entries during the period of trial and the preparatory period immediately preceding trial, they do not explain why those entries they highlighted show an unreasonable expenditure of time. Since defendants highlight most of Mr. Fields' entries during this time period, but none of those by Ms. Jacob or Ms. Higgins, we surmise they challenge his time because he was the third attorney on the case.[7] But, as we have already explained, that alone is not a principled basis to exclude time.

That said, we are concerned about the amount of time that the three attorneys devoted to trial and trial preparation. During the period from June 28 (two weeks before trial) until July 19 (one day after the verdict was returned), the three attorneys collectively logged some 600 hours (241.85 by Ms. Jacob, 205.15 by Mr. Fields, and 155.8 by Ms. Higgins). We understand that there was still some expert discovery ongoing during this time period and that there was significant motion *in limine* practice. And, we are mindful of the Seventh Circuit's admonition that lawyers "do not come from cookie cutters." *Gussman*, 986 F.2d at 1150. We nonetheless consider 600 hours of trial and preparation time to be excessive for a four-day jury trial. We will make no adjustment to Ms. Higgins's time, but will reduce the trial and trial preparation time spent by Ms. Jacob and Mr. Fields to 150 hours each, a reduction of 91.85 hours and 55.15 hours, respectively.

We also are concerned about the time entries of Mr. Cort. During the period from June 28 through July 19, Mr. Cort logged 239.40 hours – including three 20+ hour days on July 10, 12

---

[7] The exception for Ms. Higgins was an entry on July 21, 2017, after Ms. Higgins had left Chicago to return to San Francisco, which shows 6.33 hours.

and 13. We are well aware of the rigors of trial preparation and the enormously helpful role that paralegals can play in facilitating the efficient presentation of evidence at trial. However, 240 hours is excessive for that task. If we allotted 14 hours for each of the four trial days (56 hours), 12 hours for the weekend that fell during trial, and 12 hours days for the five days prior to trial (60 hours), that would come to 128 hours, a reduction of 111.40 hours. We view that amount of time reasonable for the paralegal work in the trial phase, and thus will reduce the time claimed for Mr. Cort to that amount.

\* \* \* \* \*

Based on the foregoing analysis, we recommend that the district judge reduce the amount of time that is included in the lodestar calculation by 440.69 attorney hours (Fink – by 25.85 hours; Jacob – by 282.31 hours; Fields – by 118.80; and Higgins – by 13.73) and by 111.40 paralegal hours (Cort). There are highlighted entries that we cannot correlate to specific criticisms in defendants' response, and so we disregard the challenges to those entries.

### C.

Based on the forgoing, our determination of the lodestar calculation for each member of plaintiff's legal team is as follows:

| LEGAL TEAM MEMBER | HOURS SOUGHT | ADJUSTED HOURS | HOURLY RATE | LODESTAR AMOUNT |
|---|---|---|---|---|
| Steven J. Fink | 50.82 | 24.97 | 465.00 | $11,611.05 |
| Trish Higgins | 299.67 | 285.94 | $650.00 | $185,861.00 |
| Johanna Jacob | 1,289.91 | 1,007.60 | $400.00 | $404,040.00 |
| Alex Fields | 598.81 | 480.01 | $300.00 | $144,003.00 |
| Noah W. Cort | 299.67 | 188.27 | $125.00 | $23,533.75 |
| TOTAL | | | | $768,048.80 |

We now consider whether the lodestar calculation we have reached should be adjusted. Defendants argue that the lodestar figure should be reduced because: (1) plaintiff prevailed on only some of her claims and recovered only a small percentage of the damages she sought; (2) the fees sought are excessive, because they are so disproportionate to the amount recovered; and (3) some of the time spent on failed claims could not be readily accounted for in the lodestar analysis (Defs.' Resp. at 5-6, 11-12). In reply, plaintiff contends that: (1) she achieved a substantial victory because she succeeded on her wage and hour claims, which was the "primary goal in bringing suit" (Pl.'s Reply at 3); (2) the degree of financial success "has no bearing on Plaintiff's measure of attorney's fees" (*Id.*, at 8); and (3) the work that plaintiff's counsel performed with respect to the trafficking claims is work that was "essential to each of her other claims, including the wage and hour claims" (*Id.*, at 4). Plaintiff also contends that there is no need to reduce the lodestar to account for overstaffing, as plaintiff already has eliminated from her request the time spent by members of the legal team who did not bill more than $20,000.00 to the matter, and that to further reduce the lodestar would punish her attorneys for "zealous advocacy" (*Id.*, at 6-7).

18

The lodestar calculation is a "starting point" in the fee determination, a point that may be adjusted based on a variety of considerations. *Estate of Enoch,* 570 F.3d at 823. Those factors include the "complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Schlacher v. Law Offices of Phillip J. Rotche & Assocs.,* 574 F.3d 852, 856-57 (7th Cir. 2009). In a case with a mixed outcome, such as this one, we also consider whether "the work on each set of claims is difficult to disentangle, [and as a result, whether] the lodestar calculation will likely include some time spent on unsuccessful claims." *Montanez,* 755 F.3d at 553.

Plaintiff is incorrect in contending that the degree of financial success has no relevance to the fee award. A court may consider the gap between the amount the plaintiff sought at trial and the recovery she obtained in assessing the degree of success. *Sommerfield v. City of Chicago,* 863 F.3d 645, 651 (7th Cir. 2017); *Montanez,* 755 F.3d at 566; *Connolly v. Nat'l Sch. Bus Serv., Inc.,* 177 F.3d 593, 597 (7th Cir. 1999). While there are no "mechanical rules requiring that a reasonable attorney's fee be no greater than some multiple of the damages claimed or recovered," nonetheless, "proportionality concerns are a factor in determining what a reasonable attorney's fee is." *Moriarty,* 233 F.3d at 967-68. "[A] fee request that dwarfs the damages award might raise a red flag." *Montanez,* 755 F.3d at 557, quoting *Anderson v. AB Painting & Sandblasting Inc.,*578 F.3d 542, 546 (7th Cir. 2009); *see also Moriarty*, 223 F.3d at 968 (a court "should evidence increased reflection before awarding attorney's fees that are large multiples of the damages recovered or multiples of the damages claimed").

Defendants bear the burden of showing that the lodestar calculation should be reduced. *Robinson v. City of Harvey,* 489 F.3d 864, 872 (7th Cir. 2007). For the following reasons, we conclude that defendants have satisfied that burden.

19

*First,* we consider the result that plaintiff achieved to be a solid, but not exceptional, one. Obtaining a jury verdict of $156,688.00 on a single-plaintiff wage and hour claim is no small matter. However, plaintiff failed on her trafficking claims, and although she now seeks to minimize the importance of those claims (Pl.'s Reply at 5), that is inconsistent with the manner in which this case came to plaintiff's counsel. Plaintiff does not dispute defendants' statement (Defs.' Resp. at 6) that plaintiff's counsel took the case on a referral from the Safe Horizon's Anti-Trafficking Program, and that two of that organization's attorneys also appeared in the case. While plaintiff protests that the trafficking claims constituted only four of the 13 claims litigated at trial (Pl.'s Reply at 5), we note that the complaint asserts that plaintiff brought this case to seek "just compensation for a *victim of human trafficking*" (doc. # 1: Complaint, ¶ 1) (emphasis added). We have serious doubt that the firm would have invested the kind of time it devoted to this case were it litigated merely as a single-plaintiff wage and hour case without the human trafficking claims.

In addition, we must weigh the $156,688.00 verdict that plaintiff achieved against the result that plaintiff sought. In opposing plaintiff's bill of costs, defendants assert – without contradiction – that plaintiff sought a recovery of nearly $1.8 million on her wage claims and another $1,192,590.00 on the trafficking claims (Defs.' Obj. to Bill of Costs at 1-2 and n.2). Perhaps the large gap between the recovery plaintiff sought and the recovery she achieved may be chalked up to the proposition that the "lawyers aimed higher than they hit, which . . . is a sound tactic." *Bankston v. State of Ill.,* 60 F.3d 1249, 1256 (7th Cir. 1995). But, the tactic of "aiming high" is not a license to litigate a case based on an unrealistic assessment of its economic value.

20

*Second*, we consider the complexity of the case. We have been offered no evidence that the legal principles here were complex. But, there were significant factual questions concerning plaintiff's motivation and her status in defendants' household, which were rendered more complex than would ordinarily be the case due to language barriers and the need to explore cultural norms (including through experts) to help provide answers to those questions.

*Third,* we consider whether the litigation uniquely served the public interest. To be sure, any lawsuit that vindicates the right of an employee to receive the pay to which she is entitled serves a public interest. However, that can be said of every wage and hour case in which a plaintiff prevails. The victory, while surely important to the plaintiff, involved a violation of the FLSA and the Wage Act by two individuals. It did not have any broader public interest ramifications, as may have been the case had plaintiff prevailed on her trafficking claims – especially if the victory had exposed endemic problems to be remedied.

*Fourth,* we consider the amount of fees generated by the lodestar calculation, as we have adjusted it ($768,048.80), against the jury verdict that plaintiff achieved ($156,688.00). The fact that the fees sought are nearly five times the amount of plaintiff's recovery "raise[s] a red flag." *Moriarty,* 233 F.3d at 967-68. While there is "no rule *requiring* proportionality between damages and attorneys' fees," it also is the case that there is no "categorical ban on considering proportionality." *Sommerfield,* 863 F.3d at 651 (emphasis in original; citation omitted). Rather, "a district court *may* consider proportionality as one factor in determining a reasonable fee" (*Id.*) (emphasis in original; citation omitted).

As a point of comparison, if this were a contingency fee case without statutory fee shifting, and assuming a 40 percent contingency fee, the plaintiff's recovery would net the attorneys less than $40,000.00 in attorneys' fees. We offer that observation not to say that

21

plaintiff's counsel here should be so limited, but rather to make the point that a lawyer cannot take on a statutory fee shifting case and (if she prevails) seek fees without any consideration of whether the time spent on the case fairly reflected its economic value.

*Fifth*, we take into account that plaintiff did not prevail on the trafficking or fraudulent misrepresentation claims. The significance of that fact lies in the inability to surgically eliminate from the lodestar calculation time spent on those claims that did not contribute to the prosecution of the claims on which plaintiff prevailed. There no doubt was time that plaintiff devoted to the failed claims (such as legal research and summary judgment briefing) that was not relevant to the claims on which plaintiff succeeded, but we have not been able to precisely exclude that time from the lodestar calculation. As a result, in determining whether to adjust the lodestar calculation, we take into account that the lodestar calculation "will likely include some time spent on unsuccessful claims." *Montanez,* 755 F.3d at 553.

The Seventh Circuit has directed that a trial court "provide a clear and concise explanation for its [fee] award, and may not 'eyeball' and decrease the fee by an arbitrary percentage because of a visceral reaction that the request is excessive." *Schlacher,* 574 F.3d at 857. On the other hand, we must confront the reality that there is no precise formula for determining whether (and by how much) to reduce a lodestar calculation. In this case, we recommend a reduction of 40 percent, which would lead to a fee award of $460,829.28 ($768,048.80 x .60), an amount that is slightly more than three times the jury verdict. We conclude that this reduction fairly reflects the foregoing considerations, and in particular: (1) plaintiff's degree of success, in light of the claims on which she failed and a recovery that was significant but a very small percentage of the amount she had sought; (2) the proportionality of the attorneys' fees sought in relation to plaintiff's recovery; and (3) the inability to eliminate

22

from the lodestar calculation specific hours that would not have been spent on the case had it been litigated without the failed claims.

Defendants suggest at least a 50 percent reduction (Defs.' Resp. at 12), but we conclude that level of reduction is too stiff in light of the adjustments to hours included in the lodestar calculation, plaintiff's success in achieving a six-figure verdict, and the fact that there is no strict proportionality rule that limits fees based on the amount of the recovery. Moreover, we do not view this reduction as penalizing plaintiff's counsel for "fight[ing] zealously for their client" (Pl.'s Reply at 6). Zealous representation is not a justification for an unreasonable fee request.

Finally, we note that one of defendants' exhibits shows that the parties exchanged preliminary settlement proposals in November 2015 (Defs.' Resp., Ex. 2) – long before most of the work had been done and most of the fees had been generated in the case. Plaintiff's proposal was within the ballpark of the jury verdict she obtained (and far less than the amount she sought from the jury). Defendants' initial response to the settlement proposal was to offer a number that was a small percentage of the eventual verdict, which led plaintiff to then terminate the discussions. Of course, there is no requirement that parties settle their cases. They are entitled to proceed with discovery and, if the case presents triable claims, to have a jury resolve their dispute. That said, in our experience, economic gaps of the amount reflected in the parties' initial proposals are quite often bridged by parties who make genuine efforts to settle a case. We have no evidence that the parties ever again engaged in settlement discussions. As a result, "both sides must share in the responsibility" of the ensuing two years of litigation, and a fee award that we doubt satisfies either side. *Catalan*, 2009 WL 2986122, at *35-36.

23

## II.

Finally, we address plaintiff's request for $11,345.90 in costs (doc. # 245), which plaintiff has said is a reduction from a total of $120,713.10 in costs her attorneys actually incurred (doc. # 261: Pl.'s Motion to Award Fees and Costs, Ex. A). The amount of costs plaintiff seeks is composed of: (1) $400.00 for filing fees; (2) $1,377.45 for service of summons and subpoenas; (3) $6,917.45 for transcripts; (4) $352.00 for witness fees; and (5) $2,299.00 for the cost of an interpreter for trial.

Federal Rule of Civil Procedure 54(d)(1) states that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." In this Circuit, there is a presumption in favor of awarding costs to a prevailing party that is "difficult to overcome." *Weeks v. Samsung Heavy Indus. Co.,* 126 F.3d 926, 945 (7th Cir. 1997). Generally, costs will be denied to a prevailing party only if there is misconduct by the prevailing party worthy of penalty, or the losing party demonstrates an inability to pay. *Id.*

At the threshold, defendants argue that we should find that plaintiff is not a "prevailing party" within the meaning of Rule 54 because she did not prevail on a "substantial part of the litigation" (Defs.' Obj. at 2, quoting *Testa v. Village of Mundelein*, 89 F.3d 443, 447 (7th Cir. 1996)). Defendants argue that plaintiff's victory was not substantial because she did not prevail on her trafficking claims, which were "the focus of Plaintiff's case and the reason the action was brought," and because the amount of the verdict she achieved was far less than the recovery she sought (Defs.' Obj. at 2). In a case with mixed results, a trial court has "especially broad discretion to award or deny costs." *Baker v. Lindgren,* 856 F.3d 498, 502 (7th Cir. 2017). In deciding how to exercise that discretion, we note that a party may be deemed to have prevailed

24

on a substantial part of the litigation "even when the party does not prevail on every claim." *Id.* For the reasons we already have discussed, we find that plaintiff achieved a significant victory in a factually complex case. We therefore exercise our discretion to award plaintiff costs as the prevailing party.

Defendants do not attempt to show that, as a prevailing party, plaintiff has engaged in misconduct that should result in her forfeiting the right to recover costs. Nor have defendants attempted to show that they are unable to pay an award of costs. Thus, we turn to whether the costs sought by plaintiff were reasonable and necessary, which is plaintiff's burden to show. *Trs. of Chicago Plastering Inst. Pension Trust v. Cork Plastering Co.,* 570 F.3d 890, 906 (7th Cir. 2009). Defendants do not specifically challenge the fees for filing, service and witnesses, or the costs for interpreters. Rather, the defendants offer one specific and two general objections to the costs.

*First,* defendants argue that there should be no reimbursement for the costs associated with the testimony of Florence Burke, Charlotte Walker-Said, Charles Folabit, and Nerlande Laplante on the ground that their testimony related "principally" to trafficking claims (Defs.' Obj. at 3). "Principally" does not mean "entirely," and defendants offer no analysis for us to consider in assessing this argument. Undeveloped arguments are waived. *See, e.g., United States v. Parkhurst,* 865 F.3d 509, 524 (7th Cir. 2017).

*Second,* defendants argue more generally we should reduce the costs awarded by some undefined amount to adjust for plaintiff's failure to succeed on some claims, and then further reduce the remaining amount of costs by two-thirds because of limited recovery on the wage claims (Defs.' Obj. at 3). Defendants offer no legal authority to support this kind of meat cleaver approach to assessing costs.

25

We therefore recommend that the district judge award plaintiff the full measure of costs that she seeks: $11,345.90.

## CONCLUSION

For the reasons set forth above, we recommend that the district judge (1) grant plaintiff's motion for attorneys' fees (doc. # 261), in the reduced amount of $460,829.28; and (2) grant plaintiff her bill of costs (doc. # 245) in the amount of $11,345.90.

Specific written objections to this Report and Recommendation may be served and filed within fourteen (14) days from the date that this order is served. Fed. R. Civ. P. 72(a). Failure to file objections with the district court within the specific time will result in a waiver of the right to appeal all findings—factual and legal—made by this Court in the Report and Recommendation. *See Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004) (citing *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986)).

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATE: January 10, 2018**

26