**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHRISTINE EKALLIIPSE MOULOKI, ) </br> ) </br> Plaintiff, ) </br> v. ) </br> ) </br> MARIE PAULE EPEE & ERIC NGADO ) </br> EPEE, ) </br> ) </br> Defendants. ) </br> ) | No. 14 C 5532 </br> </br> Hon. Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Christine Ekalliipse Mouloki filed a nine-count Complaint seeking relief for the childcare she provided Defendants Marie Paule Epee and Eric Ngado Epee after she moved to the United States from Cameroon. (Dkt. 1). After a four-day trial, the jury found for Defendants on Plaintiff's claims under the Trafficking Victims Protection Reauthorization Act of 2003 ("TVPRA") and state law claim for fraudulent misrepresentation and found for Plaintiff on her claims under the Fair Labor Standards Act ("FLSA") and state law claims for conversion, unjust enrichment and violation of the Illinois Wage Payment and Collection Act (the "Wage Act"). (Dkts. 229, 232). The jury awarded Plaintiff a total of $156,688.00 in damages. *Id.* On July 18, 2017, the Court entered judgment on the verdict but did not set forth a damages amount or indicate whether any prejudgment interest would be included in the judgment. (Dkt. 230).

During trial, a dispute arose between the parties as to the proper calculation of damages under the Wage Act, and the Court instructed the parties to submit briefs on the issue by July 21, 2017. (Dkt. 224). Plaintiff timely filed a Motion to Award Statutory Damages of 2% Monthly Interest under the Illinois Wage Payment and Collection Act. (Dkt. 233). Defendants failed to file any brief and, on July 28, 2017, the Court granted Plaintiff's motion. (Dkt. 235). On August

1

12, 2017, Plaintiff filed a Motion to Amend the Court's July 18 Judgment to include the damages awarded by the jury and the 2% statutory penalty and to award prejudgment interest. (Dkt. 236). On August 18, 2017, Defendants filed a Motion to Vacate the Court's July 28 Order granting Plaintiff's Motion to Award the 2% statutory damages. (Dkt. 247). Meanwhile, Plaintiff filed a Bill of Costs (Dkt. 245) and a Motion for Attorneys' Fees (Dkt. 261), both of which were objected to by Defendants. (Dkts. 254, 277).

On October 27, 2017, this Court referred the post judgment motions to Magistrate Judge Schenkier, who issued a pair of Report and Recommendations recommending that the Court:

- grant Defendants' Motion to Vacate the July 28, 2017 Order (Dkt. 257);

- partially grant Plaintiff's Motion to Amend the Judgment (Dkt. 236) to add the award of damages determined by the jury in the following amounts:

    (1) A total of $78,344.00 in damages against defendant Marie Epee ($37,730.00 in unpaid wages for violations of the FLSA; $37,730.00 in liquidated damages for violations of the FLSA; $0.00 in damages for violations of the Wage Act; $384.00 in damages for conversion; and $2,500.00 in damages for unjust enrichment); and

    (2) A total of $78,344.00 in damages against defendant Eric Epee ($37,730.00 in unpaid wages for violations of the FLSA; $37,730.00 in liquidated damages for violations of the FLSA; $0.00 in damages for violations of the Wage Act; $384.00 in damages for conversion; and $2,500.00 in damages for unjust enrichment);

- grant Plaintiff's Motion for Attorneys' Fees (Dkt. 261) in the reduced amount of $460,829.28; and

- grant Plaintiff's Bill of Costs (Dkt. 245) in the amount of $11,345.90.

(Dkts. 282, 284).

Plaintiff objected to Judge Schenkier's denial of the portion of her Motion to Amend the Judgment seeking to add the 2% statutory penalty under the Wage Act and prejudgment interest under the Illinois Interest Act. (Dkt. 285). Defendants objected to Judge Schenkier's award of

2

damages against each Defendant separately rather than jointly (Dkt. 286) and of Plaintiff's attorneys' fees and costs. (Dkt. 287).

For the reasons stated herein, each party's objections are overruled, except that the Court will amend the Judgment to include the award of damages determined by the jury in the total amount of $156,688.00 ($75,460.00 in unpaid wages for violations of the FLSA; $75,460.00 in liquidated damages for violations of the FLSA; $0.00 in damages for violations of the Wage Act; $786.00 in damages for conversion; and $5,000.00 in damages for unjust enrichment) against Defendants jointly and severally.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure Rule 72(b) requires a party that disagrees with a magistrate judge's report and recommendation on a dispositive motion to file "specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *see also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), a district court reviews *de novo* any portion of the magistrate judge's report and recommendation to which specific written objections have been filed. *See Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000) (citing *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999)); *Rajaratnam v. Moyer*, 47 F.3d 922, 925 (7th Cir. 1995). In conducting a *de novo* review pursuant to Rule 72(b), the Court need not conduct a new hearing but must give fresh consideration to each specific objection made. *Rajaratnam*, 47 F.3d at 925 n.8. The district court judge makes the ultimate decision to adopt, reject, or modify the recommendation, or return it to the magistrate judge with further instructions. *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009); *see also* Fed. R. Civ. P. 72(b)(3).

**OBJECTIONS**

**I. Plaintiff's Objection 1 (Dkt. 285): The Magistrate Erred in Denying the 2% Statutory Penalty under the 2011 Amendments to the Wage Act**

Plaintiff objects to the denial of the portion of her Motion to Amend the Judgment to add the 2% statutory penalty under the 2011 amendments to the Wage Act on several grounds: (a) that Defendants forfeited their retroactivity defense; (b) that the Magistrate Judge erred in disregarding a district court case holding the 2011 amendments are retroactive; (c) that the Magistrate Judge erred in concluding that the 2011 amendments have an express delayed implementation provision; (d) that the Magistrate Judge erred in concluding that the 2011 amendments were substantive, not procedural; and (e) that the Magistrate Judge erred in not applying the 2% statutory penalty at least to the months of continuing nonpayment after January 1, 2011.

**(a)**

Plaintiff argues that Defendants forfeited their retroactivity defense first by failing to assert it before trial and second by failing to submit briefing on the retroactivity issue by the July 21 filing deadline. Plaintiff's first argument does not concern Judge Schenkier's recommendations at all because as Plaintiff admits, during trial, this Court specifically ordered the parties to submit briefs on the retroactivity issue. However, Defendants' failure to timely file their brief then gave rise to the Court's July 28 Order granting Plaintiff's Motion to Amend the Judgment and Defendants' subsequent Motion to Vacate that Order, which are subject to Judge Schenkier's recommendations.

Plaintiff argues that Judge Schenkier erred in analyzing Defendants' Motion to Vacate under Rule 59(e) rather than Rule 60(b). Whether a post-judgment motion is analyzed under Rule 59(e) or Rule 60(b) depends on the substance of the motion. *See Obriecht v. Raemisch*, 517

4

F.3d 489, 493 (7th Cir. 2008). Judge Schenkier accurately observed that Defendants' Motion to Vacate is based on an error of law—namely, that it would be an error of law to add to the judgment an award of 2% statutory damages—and therefore falls within the ambit of Rule 59(e), not Rule 60(b). *See id.* ("[Plaintiff] based his motion for reconsideration on errors of law, a basis encompassed by Rule 59(e), not Rule 60(b)."); *Lightspeed Media Corp. v. Smith*, 830 F.3d 500, 505–06 (7th Cir. 2016) (Rule 59(e) "requires the movant to demonstrate a manifest error of law or fact or present newly discovered evidence.") (internal citations omitted). Therefore, Plaintiff's argument that Defendants failed to show "excusable neglect" under Rule 60(b) is irrelevant.

Rule 59(e) requires that "[a] motion to alter or amend a judgment be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 56(e). Defendants timely filed their Motion to Vacate three weeks after the Court's July 28 Order. Therefore, Defendants did not waive their retroactivity defense because they timely filed their motion seeking leave to raise it and the Court grants their motion.

### (b), (c), (d)

Plaintiff's next arguments concern Judge Schenkier's finding that the 2011 amendments to the Wage Act are not retroactive. Plaintiff asserts that Judge Schenkier erred in disregarding a federal district court holding in *Brandl v. Superior Air-Ground Ambulance Serv., Inc.* that the 2011 amendments apply retroactively. 2012 WL 7763427, at *2 (N.D. Ill. Dec. 7, 2012). But Judge Schenkier considered and rejected this exact argument. Interpreting state law as the state's highest court would, as he must, Judge Schenkier properly looked to Illinois appellate court decisions issued *after* the 2012 *Brandl* decision to determine the retroactivity issue. *See Rodas v. Seidlin*, 656 F.3d 610, 626 (7th Cir. 2011) (to interpret state law, federal courts "determine how

5

the state's highest court would rule" and "defer to interpretations offered by state appellate courts unless there is a persuasive indication that the state supreme court would decide the issue differently") (internal citations omitted). The Illinois Appellate Court decisions Judge Schenkier relied upon held that the 2011 amendments are not retroactive. *See Sommese v. Am. Bank & Tr. Co.*, *N.A.*, 87 N.E.3d 285, 290 (Ill App. Ct.), *reh'g denied* (Oct. 2, 2017), *appeal denied*, 94 N.E.3d 640 (Ill. 2018) (2011 amendment to Wage Act does not apply retroactively); *Gilmore v. Carey*, 74 N.E.3d 34, 42 (Ill. App. Ct. 2017) (same).

To determine whether a statute applies retroactively, Illinois courts first ask "whether the legislature has clearly indicated the temporal reach of the amended statute." *People ex rel. Alvarez v. Howard*, 72 N.E.3d 346, 352 (Ill. 2016). "If so, then that expression of legislative intent must be given effect, absent a constitutional prohibition." *Id.* If not, the court looks to Section 4 of the Statute of Statutes, 5 ILCS 70/4. *Id.* at 353. Section 4 provides that procedural changes to statutes will be applied retroactively, while substantive changes are prospective only. *Id.* The courts in *Sommese* and *Gilmore* found that the legislature "intended the [2011] amendment in question not have effect until January 2011, despite having signed the bill in July 2010" and included an "express delayed implementation date" in the amendments to that effect. *Sommese,* 87 N.E.3d at 289; *Gilmore*, 74 N.E.3d at 42. The courts held, therefore, that the legislature clearly indicated the amendments applied only prospectively. *Id.* Judge Schenkier found and this Court agrees that these decisions are directly on point.

Plaintiff argues that the amendments do not have an expressly delayed implementation date because the effective date of the amendments resulted from the operation of the Effective Date of Laws Act, not because the legislature expressly delayed implementation in the amendment itself. The Effective Date of Laws Act provides default effective dates for laws that

6

provide none; under the Act, a law passed before June 1 shall become effective on January 1 of the following year. 5 ILCS 75/1(a). The default date provided under the Effective Date of Laws Act is consistent with the effective date of the 2011 amendment to the Wage Act. However, the Court agrees with Judge Schenkier that this evidence does not defeat the conclusions of law rendered by two Illinois appellate courts that the legislature provided an effective date in the amendment itself.

Regardless, Judge Schenkier also concluded that even if Plaintiff is correct and the legislature provided no express effective date of implementation in the amendments, the amendments are not substantive and therefore, pursuant to Section 4, do not apply retroactively. Again, Judge Schenkier properly relied upon guidance from the Illinois appellate courts. In *Thomas v. Weatherguard Const. Co.*, the parties stipulated that the amendments provided no express effective date of implementation; therefore, the state court skipped the first step of the analysis and considered only whether the amendments were substantive. 42 N.E.3d 21, 37 (Ill App. Ct. 2015). The appellate court found that the amendment providing for 2% statutory damages created "a new liability, unavailable under the previous version of the law" and that new liability is "a substantive change in the law and cannot be applied retroactively." *Id.* at 39 (citing *People ex rel. Madigan v. J.T. Einoder, Inc.*, 28 N.E.3d 758, 767(Ill. 2015)). Again, this Court agrees that *Thomas* is directly on point and persuasive.

**(e)**

Finally, Plaintiff argues that Judge Schenkier erred in not applying the 2% statutory penalty to the unpaid wages that continued for the months following the amendment's effective date of January 1, 2011. The appellate court in *Sommese* explicitly rejected this argument, finding "there is nothing in the language of the statute that would allow a court to apply the

amendment only to that portion of time for which plaintiff remained unpaid after the effective date of the amendment." 87 N.E.3d at 290. Judge Schenkier therefore properly followed the state-court guidance and refused to apply the amendment piecemeal.

Altogether, Plaintiff's objections to Judge Schenkier's conclusions regarding the 2% statutory penalty are overruled.

**II.   Plaintiff's Objection 2 (Dkt. 285): The Magistrate Erred in Denying Prejudgment Interest Under the Illinois Interest Act**

Plaintiff objects to Judge Schenkier's denial of her claim for prejudgment interest on her unpaid wages and unjust enrichment claims under the Illinois Interest Act. The Illinois Interest Act provides, in relevant part, that creditors may collect prejudgment interest "at the rate of five (5) per centum per annum for all moneys after they become due . . . on money withheld by an unreasonable and vexatious delay of payment." 815 ILCS 205/2. To prove an "unreasonable or vexatious delay," Plaintiff must show that Defendants "had thrown obstacles in the way of collection or by some circumvention or management of [their] own had induced [her] to delay taking proceedings to collect the debt longer than [s]he would have otherwise done." *Chandra v. Chandra,* 53 N.E.3d 186, 207 (Ill. App. Ct. 2016) (quoting *In re Estate of Feinberg*, 6. N.E.3d 310, 346 (Ill. App. Ct. 2014)). An "honest dispute as to the existence of a legal obligation will not result in an unreasonable and vexatious delay which would permit recovery of interest" under the Illinois Interest Act. *Telemark Dev. Grp., Inc. v. Mengelt*, 313 F.3d 972, 986 (7th Cir. 2002) (citing *Emmenegger Constr. Co., Inc. v. King*, N.E.2d 738, 743 (1982)).

Plaintiff argues that Judge Schenkier erred in finding that she failed to put forward evidence that Defendants' delay in paying her wages was more than "an honest dispute as to the existence of a legal obligation." The Court agrees with Judge Schenkier's assessment. The only evidence offered by Plaintiff is that Defendants "received the benefit of her services for five and

8

one half years, and paid her at most $350 per month" and "are highly educated American citizens" who "knew that they were required to pay [her] at least the federal minimum wage." This is insufficient to demonstrate that Defendants' assertion throughout the litigation that Plaintiff was living with them as family does not constitute an "honest dispute." Therefore, Plaintiff's objection to Judge Schenkier's conclusion regarding prejudgment interest is overruled.

**III. Defendants' Objection 1 (Dkt. 286): The Magistrate Erred in Awarding Damages Against Each Defendant Separately Rather than Jointly**

Defendants object to Judge Schenkier's conclusion that the Court should award Plaintiff $78,344 in damages separately against each of them. Judge Schenkier awarded damages according to the findings made by the jury on the verdict form. As Judge Schenkier explains, verdict form required the jury to make separate findings for each defendant. (Dkt. 232). The jury awarded damages in the amount of $75,460.00 for violation of the FLSA, $384 for conversion, and $2500 for unjust enrichment against *each* defendant. (*Id.*) Defendants argue that the jury intended to award $75,460.00 total against Defendants jointly and only reiterated this total damages amount by entering the same amount under each Defendant's name. This Court disagrees with Defendants and adopts Judge Schenkier's finding that there is "no basis to concluded that the jury did not mean what it said when it returned separate awards . . . against each defendant."

Defendants argue that the jury received instructions regarding joint employers and adhered to these instructions by awarding a total of $75,460.00 against Defendants jointly. Specifically, the jury instructions provided:

> [A] single employee can be employed by two employers at the same time if the two employers are deemed to be joint employers. If you determine that Eric and Marie Epee are Plaintiff's joint employers, then both Eric and Marie Epee are individually and jointly responsible for any violations of the FLSA.

9

(Dkt. 231) at 35. Judge Schenkier rejected this argument, correctly observing that jury instruction is conditional on the jury finding that the Defendants were "joint employers" and the jury did not do so. Notably, the instructions also provide guidance for determining whether the Defendants are *not* joint employers. *See id.* at 36. Thus, without an explicit determination by the jury as to which employment relationship existed, the Court interprets the jury form as is. Moreover, the joint-employer instruction upon which Defendants rely applies only to the FLSA claims and therefore provides no guidance as to the damages awarded for the conversion and unjust enrichment claims.

More importantly, the jury received explicit instructions not to award duplicative damages: "You must not award compensatory damages more than once for the same injury. Plaintiff is only entitled to be made whole once, and may not recover more than she has lost." (*Id.* at 45). The Court presumes the jury follows its instructions and, therefore, awarded Plaintiff a total of $156,688 in damages for her injuries and allocated this total between the two Defendants. *See Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 311 (7th Cir. 2010) ("[I]t is unclear from the face of the verdict form whether the jury meant to allocate duplicate awards for the same injury, or whether it merely calculated total damages and allocated the amounts separately based on what it perceived to be each party's relative fault. Because we presume that juries follow the court's instructions, we will assume the latter . . . which is more consistent with the district court's instruction that the jury not award compensatory damages twice for the same injury.")

This Court disagrees, however, with the finding that the awards should be entered separately against each Defendant. Defendants are jointly and severally liable for the single injury Plaintiff suffered under each claim. Where a jury improperly allocates damages between

the parties for the single indivisible injury, the Court can cumulate the apportioned damages if doing so reflects the jury's intent. *See Thomas*, 604 F.3d at 311 (7th Cir. 2010); *see also, e.g.*, *Havoco of America, Ltd. v. Sumitomo Corp. of America*, 971 F.2d 1332, 1346 (7th Cir. 1992) ("Since we normally presume that juries follow the court's instructions, we must presume that the damages the jury awarded on each of the four counts are not duplicative awards for the same injury, and thus cumulation of the awards was proper.").  As stated above, the Court finds the jury intended to award Plaintiff a total of $156,688 in damages; therefore the Court will amend the Judgment to include the following damages against Defendants jointly and severally:

- $75,460.00 in unpaid wages for violations of the FLSA;
- $75,460.00 in liquidated damages for violations of the FLSA;
- $0.00 in damages for violations of the Wage Act;
- $786.00 in damages for conversion; and
- $5,000.00 in damages for unjust enrichment.

**IV. Defendants' Objection 2 (Dkt. 287):  The Magistrate Applied Incorrect Billing Rates for Preparation of the Post-Trial Fee Petition**

Judge Schenkier applied the following rates for all of Plaintiff's counsel's work on this matter:

| Steven J. Fink | $465.00 |
| --- | --- |
| Trish Higgins | $650.00 |
| Joanna Jacob | $400.00 |
| Alex Fields | $300.00 |
| Noah W. Cort (paralegal) | $125.00 |

According to Defendants, these rates are based on rates for civil rights work and they should no longer apply post-judgment because Plaintiff was not successful on her human-trafficking claims.  Specifically, Defendants argue that the fees claimed for preparing Plaintiff's post-trial

11

fee petition should have applied lower, FLSA-related rates. (Dkt. 287) at 2. Defendants suggest the following rates for that work:

| Steven J. Fink | $350.00 |
| Trish Higgins | $425.00 |
| Joanna Jacob | $300.00 |
| Alex Fields | $225.00 |
| Noah W. Cort (paralegal) | $100.00 |

In support of the proposed rates, Defendants cite to *Johnson v. G.D.F., Inc.*, 2014 WL 463676 (N.D. Ill. Feb. 5, 2014) and *Valerio v. Total Taxi Repair & Body Shop, LLC*, 82 F. Supp. 3d 723 (N.D. Ill. 2015), amended, 2015 WL 3962573 (N.D. Ill. June 25, 2015). But those cases contained hourly rate analyses specific to the attorneys involved and only arrived at the rate conclusions after lengthy discussion of supporting evidence submitted. For example, in *Johnson*, the court wrote for more than six pages to come to a conclusion about the proper rate for time billed from 2005 to 2011 for plaintiff's counsel Ernest Rossiello, who had applied for attorney's fees using different rates in at least five other previous matters. *Johnson*, 2014 WL 463676, at *18. Although the court eventually concluded that Rossiello was entitled to $425 per hour (as opposed to his requested rate of between $540 and $625), it does not stand that this is the current "top rate for lawyers experienced on wage cases" as Defendants suggest, particularly where the *Johnson* court took into account Rossiello's work spanning six years and adjusted his rate accordingly. Likewise, the calculations in *Valerio* are too specific to be generally applied to Plaintiff's counsel in this case. Accordingly, although they provide helpful metrics for assessing the reasonableness of the rates requested, these cases, standing alone, cannot serve as "good reason" for why a lower rate should be awarded with regard to Plaintiff's counsel's post-judgment work. *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1313 (7th Cir. 1996).

In addition to the problems with Defendants' proposed FLSA rates, the rates recommended by Judge Schenkier are appropriate to cover counsel's wage and hour work—that is, the post-judgment work—without reduction. As Judge Schenkier noted, the rates he awarded to the two attorneys who performed the lion's share of the work on this matter "are commensurate with the hourly rates for attorneys of comparable experience in wage and hour cases and consistent with the Laffey Matrix." (Dkt. 284) at 5. Although the cases presented by Defendants awarded lower rates, Defendants have failed to argue with any force that the rates awarded by Judge Schenkier cannot apply.

As a final point on Defendants' objection, it fails to specify how many hours Defendants are challenging—that is, the number of attorney and paralegal work is attributable to Plaintiff's post-judgment fee petition, either by attorney or generally. And in reviewing the contested bill, highlighted by Defendants, it does not appear that all possible fee-petition entries are contested. In any event, from what the Court can tell from Plaintiff's counsel's billing entries, the amount spent on the fee petition alone appears to be relatively low—less than 20 hours in total. Defendants' lack of specificity as to the hours to which they want lower rates applied, combined with the seemingly *de minimis* amount of hours at issue, provides further support for overruling Defendants' objections to the hourly rates applied to Plaintiff's counsel's fee petition work.

V. **Defendants' Objections 3 and 4 (Dkt. 287): Further Reductions to Excessive Hours and the Lodestar Should Have Applied**

Following trial, Plaintiff sought an award of $961,323.80 in attorneys' fees, which comprised 2,239.21 hours of attorney time and 378.40 hours of paralegal time. (Dkts. 261, 279). After a lengthy analysis of whether the number of hours devoted to the case (across 971 individual time entries) were "reasonably expended" and considering Defendants' general and specific objections to the time entries, Judge Schenkier made multiple reductions on account of

13

specific challenged activities and time entries. *See, e.g.*, (Dkt. 284) at 12 (eliminating 18.75 hours spent on researching foreign service, attachment of assets, and temporary restraining orders), 13 (eliminating 21.35 hours as duplicative), 14 (eliminating 2.57 hours as non-attorney work), 15 (eliminating 103.94 hours for briefing a sanctions fee petition). In total, Judge Schenkier recommended a reduction of 440.69 attorney hours and 111.40 paralegal hours, which then led to a lodestar amount of $768,048.80. *Id*. at 17–18. In addition to the line-item reductions, Judge Schenkier concluded that Defendants had satisfied their burden of showing that the lodestar calculation should be *further* reduced, and he reduced the claimed fees by 40 percent, for a total fee award of $460,829.28, a figure just slightly more than three times the jury verdict and more than $500,000 less than originally sought. *Id*. at 22.

Defendants object both to the line-item reductions and the overall lodestar reduction, arguing that both should have been larger. Specifically, with regard to the line-item reductions, Defendants first take issue with Judge Schenkier's conclusion that many of Defendants' challenges were too vague to be considered. According to Defendants, Judge Schenkier improperly placed the burden on Defendants, when *Plaintiff* has the burden to scrutinize her time entries before submitting her petition. But Defendants' argument misses the point. Although Defendant is correct in that Plaintiff bears the "burden of proving the reasonableness of the hours worked and rates claimed," *Valerio*, 82 F. Supp. 3d at 730, Defendants must still provide a principled basis to reduce time entries that allegedly are excessive. *Id*. at 743 n.4. Here, Defendants highlighted entries on Plaintiff's counsel's bill that they found excessive, and in some instances, they failed to elaborate as to why the highlighted entries should be eliminated from consideration. In the absence of any argument or authority to support an hours reduction, the Court will not "engage in an arbitrary determination of how long a 'reasonable' attorney

14

would spend" on certain tasks. *O'Sullivan v. City of Chicago*, 484 F. Supp. 2d 829, 837 (N.D. Ill. 2007) (rejecting excessiveness challenges where the defendant "offered no objective standard, no 'reasonable' number of hours to spend on a given activity, with which to compare" to plaintiff's fee request). Still, Judge Schenkier made a notable effort to "consider each specific challenge defendants raise in their response to the extant we are able to readily correlate that challenge to highlighted entries." (Dkt. 284) at 9. Accordingly, Judge Schenkier did not err in refusing to consider Defendants' unsupported and unexplained challenges, and the Court will not consider those underdeveloped arguments or challenges here either. *See Finwall v. City of Chicago*, 239 F.R.D. 504, 506 (N.D. Ill. 2006) (holding party may not raise argument for first time in an objection to magistrate judge's recommendation).

Second, Defendants' argue that the overall reduction to the lodestar should have been "at least 50%." (Dkt. 287) at 5. In arguing for a greater reduction, Defendants state that the 40% reduction is inadequate because "a $460,000 fee award on a verdict of $75,000 is still excessive at more than six times the recovery." *Id*. But given the Court's finding above that the jury verdict was for $156,688.00 total, the awarded attorneys' fees are only about three times more than that amount. *See* (Dkt. 232). Further, to the extent that Defendants are attempting to view the requested attorneys' fees against the verdict against each defendant individually, which is not entirely clear, they have not cited any legal authority to support this type of divisive analysis, let alone anything that might support simply reducing the lodestar by another 10% on this type of verdict-dividing approach. In light of the lengthy analysis supporting Judge Schenkier's proposed 40% overall lodestar reduction, Defendants' unsupported 50% reduction is untenable. *See People Who Care*, 90 F.3d at 1314 (when making reductions, a court cannot simply "eyeball the fee request and cut it down by an arbitrary percentage because it seemed excessive to the

court") (citations and internal quotation marks omitted); *see also Uphoff v. Elegant Bath. Ltd.*, 176 F.3d 399, 409 (7th Cir. 1999) (court must provide a "concise but clear explanation of its reasons" for any reduction). Accordingly, Defendants' objections to the specific and general reductions applied by Judge Schenkier are overruled.

## VI. Defendants' Objection 5 (Dkt. 287): Costs Should Have Been Reduced

Finally, Defendants object to Judge Schenkier's determination that Plaintiff should be awarded the full amount of costs sought. Specifically, Defendants renew the arguments that they presented to Judge Schenkier: (1) Plaintiff should not be able to recover all of her requested costs as a "prevailing party" because Defendants prevailed on some of the claims and therefore costs for the non-prevailing claims should have been shifted, and (2) Plaintiff should not be allowed to recover fees related to the testimony of witnesses that "testified on trafficking." (Dkt. 287) at 5–6.

For purposes of Rule 54(d), the "prevailing party" is the party who prevails "as to the substantial part of the litigation." *Richardson v. City of Chicago*, 2013 WL 2451107, at *7 (N.D. Ill. June 5, 2013), *aff'd*, 740 F.3d 1099 (7th Cir. 2014) (citing *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1015 (7th Cir. 1985)). As Defendants themselves acknowledge, "courts have especially broad discretion to award or deny costs in mixed result cases," *Gavoni v. Dobbs House, Inc.*, 164 F.3d 1071, 1075 (7th Cir. 1999), and Judge Schenkier appropriately exercised this discretion to award Plaintiff all of her requested costs, finding that she "achieved a significant victory in a factually complex case." (Dkt. 284) at 25. And yet, Defendants continue to argue generally, as they did below, that the costs should be reduced by some unspecified amount—be it expenses related to trafficking testimony or otherwise tied to the unsuccessful claims—fail for the same reasons. First, these arguments lack legal authority for the approach suggested, which Judge Schenkier aptly characterized as a "meat cleaver approach

16

to assessing costs." (Dkt. 284) at 25. Further, and perhaps more significantly, the arguments fail to provide the Court with any proposed reduction amounts or any type of factual or mathematical analysis to support a reduction. In the absence of the necessary legal support and specific figures, the Court finds, as did Judge Schenkier, that Defendants have waived their argument on this point, and the costs will not be reduced. Overall, Defendants' objections to Judge Schenkier's determination that Plaintiff should be awarded $11,345.90 in costs are overruled.

## CONCLUSION

For the reasons stated above, the Objections to Magistrate Judge Schenkier's Report and Recommendations (Dkts. 282, 284) are overruled with one exception. The Court rules as follows:

- Defendants' Motion to Vacate the July 28, 2017 Order (Dkt. 247) is granted;

- Plaintiff's Motion to Amend the Judgment (Dkt. 236) is granted in part to add the award of damages determined by the jury in the total amount of $156,688.00 ($75,460.00 in unpaid wages for violations of the FLSA; $75,460.00 in liquidated damages for violations of the FLSA; $0.00 in damages for violations of the Wage Act; $786.00 in damages for conversion; and $5,000.00 in damages for unjust enrichment) against Defendants jointly and severally;

- Plaintiff's Motion for Attorneys' Fees (Dkt. 261) in the reduced amount of $460,829.28 is granted; and

- Plaintiff's Bill of Costs (Dkt. 245) in the amount of $11,345.90 is granted.

In light of the foregoing, Plaintiff's emergency *ex parte* motion to enter monetary judgment by May 3, 2018 (Dkt. 290) is denied as moot.

_____
Hon. Virginia M. Kendall
United States District Judge

Date: May 7, 2018

17